# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-CV-00244-RWS |
| | § | |
| v. | § | |
| | § | |
| JASPER AMADI OGBONNA, | § | |
| | § | |
| Defendant. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court is the Report and Recommendation of United States Magistrate Judge John D. Love (Docket No. 27; "Report") recommending that Plaintiff the United States of America's (the "Government") Motion for Judgment on the Pleadings (Docket No. 12) be granted. Defendant Jasper Amadi Ogbonna ("Ogbonna") filed written Objections (Docket No. 28), and the Government filed a Response (Docket No. 29). Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court reviews de novo the objected-to portions of the Report.

The following facts are not disputed: Ogbonna committed the crime of aiding and abetting healthcare fraud during the statutory five-year good moral character period before he applied for United States citizenship. While his crime remained undiscovered, Ogbonna was naturalized and became a United States citizen. Subsequently, Ogbonna pled guilty to and was convicted of the crime. The Government now seeks to revoke Ogbonna's naturalization.

Naturalization is revocable under 8 U.S.C. § 1451(a) if, at the time it was procured, the applicant for citizenship failed to comply with any of the requirements of naturalization, including having "good moral character." *See* 8 U.S.C. § 1427(a)(3). Under Section 1427(e), good moral character must be determined by looking to "the applicant's conduct and acts" during a five-year

period[1] (the "good moral character period") prior to the application for naturalization. 8 U.S.C § 1427(e). Section 1101(f) lists several categories of persons who shall not be regarded as having good moral character; one of these categories involves people who commit crimes of moral turpitude during the good moral character period. 8 U.S.C. § 1101(f)(3). The current dispute between Ogbonna and the Government focuses on the scope of that category, specifically whether Section 1101(f)(3) requires only that the crime of moral turpitude be committed during the good moral character period or whether it additionally requires that the applicant have been convicted[2] during the good moral character period.

In the Report, the Magistrate Judge found that Ogbonna's crime is one of moral turpitude. Docket No. 27 at 11. Because it was undisputed that Ogbonna committed the crime during the good moral character period, the only question became whether he must have also been convicted for the crime during the good moral character period. The Magistrate Judge interpreted the relevant statutes and held that Ogbonna's naturalization may be revoked because he committed a crime of moral turpitude during the statutory good moral character period notwithstanding that Ogbonna was not convicted until later. Docket No. 27 at 5–10, 12 (citing among other cases *United States v. Suarez*, 664 F.3d 655 (7th Cir. 2011)).

In his Objections, Ogbonna argues that the Magistrate Judge's interpretation of the applicable statute is incorrect. Specifically, Ogbonna objects that 8 U.S.C. § 1101(f)(3) requires that an applicant be convicted of a crime of moral turpitude during the good moral character period. Docket No. 28 at 1–3. He further objects that the Magistrate Judge misunderstood which part of

---

[1] 8 U.S.C § 1427(e) also provides for taking into account the applicant's conduct and acts prior to the five-year period.

[2] In addition to conviction, § 1101(f)(3) can be satisfied if the applicant "admits the commission" of the crime of moral turpitude.

8 U.S.C. § 1101(f)(3) creates the requirement that an applicant be convicted of a crime of moral turpitude during the good moral character period. *Id.* at 3. Ogbonna continues to argue that the *Suarez*, *Ekpin*[3], and *Agarwal*[4] decisions cited by the Magistrate Judge are premised on an improper interpretation of the statute. *Id.* at 3–6. Finally, Ogbonna argues that following the purported plain language of the statute does not lead to an absurd result. *Id.* at 6–7. Because all of Ogbonna's objections are directed to the Magistrate Judge's interpretation of the statute, the Court treats them as one objection.

As a preliminary matter, Ogbonna does not object to the Magistrate Judge's finding that his crime is one of moral turpitude and is accordingly barred from *de novo* review of that finding and, except upon grounds of plain error, from appellate review of any unobjected-to factual findings and legal conclusion accepted and adopted by this Court. *Douglass v. Unites States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Having reviewed the Report in regard to moral turpitude and found no error, the Court hereby **ADOPTS** the Magistrate Judge's finding. As was the case before the Magistrate Judge, the only question for the Court is whether the relevant statutes require that Ogbonna have been convicted of his crime during the good moral character period.

This Court agrees with the Magistrate Judge that 8 U.S.C. § 1101(f)(3) requires only that the crime of moral turpitude have been committed during the good moral character period and does not require that the conviction have also occurred during the same period. In making his recommendation, the Magistrate Judge relied heavily on *Suarez*. *Suarez* held that the timing requirement of § 1101(f)(3) does not apply to the conviction, reasoning that the conviction

---

[3] *United States v. Ekpin*, 214 F. Supp. 2d 707 (S.D. Tex. 2002).

[4] *Agarwal v. Napolitano*, 663 F. Supp. 2d 528 (W.D. Tex. 2009).

requirement sets out a standard of proof only and that the statutes provide no basis "to assume the *proof* must occur during the statutory period." 664 F.3d at 659–60. *Suarez* further reasoned that "[t]o read these statutes otherwise would lead to the absurd result that . . . an applicant who evaded prosecution or refused during the statutory period to admit committing a crime would have an advantage over an applicant who was convicted or who was truthful during that time period." *Id.* The Court concurs with the Magistrate Judge that *Suarez* and the reasoning therein is applicable and, rather than recapitulating the arguments in *Suarez* or the Report, the Court provides additional reasons why the Magistrate Judge's interpretation is correct.

First, Title 8 directs the good moral character inquiry to the Applicant's conduct rather than to the State's recognition of or reaction to that conduct. Section 1497, which permits the Attorney General to consider a good moral character period of more than five years under certain circumstances, directs the Attorney General to consider the Applicant's "conduct and acts." *See also* 8 C.F.R. § 316.10(a)(2) ("The service is not limited to reviewing *the applicant's conduct* during the five years . . . .") (emphasis added). Moreover, focusing on the Applicant's conduct is more consistent with evaluating the Applicant's "good moral character" than focusing on the State's reaction to that conduct. Using this context as a lens through which to view § 1101 confirms the conclusion that the timing requirement is satisfied if the conduct occurs during the good moral character period regardless of when that conduct is discovered, recognized or punished.

Second, to the extent § 1101 has two discernible meanings, the Service's[5] adoption of one of those meanings is entitled to deference if it is based on a permissible construction of the statute.

---

[5] 8 C.F.R. § 1.2 provides, "Service means U.S. Citizenship and Immigration Services, U.S. Customs and Border Patrol, and/or U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears."

*See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). In this case, 8 C.F.R. § 316.10(b)(2) provides, in part, "An applicant shall be found to lack good moral character if during the statutory period the applicant: (i) [c]ommitted one or more crimes involving moral turpitude, other than a purely political offense, for which the applicant was convicted, except as specified [elsewhere in] the Act." By separating the conviction requirement from the phrase "during the statutory period the applicant committed one or more crimes involving moral turpitude," the regulation shows that the Service's interpretation was the same as the Magistrate Judge's—the crime and the conviction are separate requirements, and only the first must be satisfied during the good moral character period. Moreover, as has already been established, such an interpretation is based on a permissible construction of the statute. Accordingly, even if the statute is ambiguous, the Magistrate Judge is still correct because it is consistent with the Service's interpretation of the statute as shown by the structure of the implementing regulation.

Because the Court agrees with the Magistrate Judge's interpretation of 8 U.S.C. § 1101(f)(3), it **ADOPTS** as its own the findings and recommendations in the Report. Accordingly, it is

**ORDERED** that the Government's Motion for Judgment on the Pleadings (Docket No. 12) is **GRANTED** and further

**ORDERED** that Judgment is entered in favor of the United States.

**SIGNED this 24th day of March, 2017.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE